No. 738

First Circuit

BRAUDS' SUGARS, INC., v. WILLIAMS RICHARDSON CO., LTD.

(March 3, 1931. Opinion and Decree.)

Ellender & Ellender, of Houma, and Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for plaintiff, appellant.

Harris Gagne, of Houma, attorney for defendant, appellee.

ELLIOTT, J. This is a contest involving the ownership of certain property which was in its nature movable, but which Brauds' Sugars, Inc., alleges was attached by Crescent-Magnolia Planting & Manufacturing Company, Limited, its former owners, to a tract of land and a sugar house, belonging to it at the time and made immovable by destination. Brauds' Sugars, Inc., alleges that it became the owner of the land and of the refinery and sugar house thereon by purchase at sheriff's sale in the foreclosure of a mortgage which has been granted on the property by the Crescent-Magnolia Planting & Manufacturing Company, Limited, to which it was attached at the time of the mortgage, which was foreclosed, and that the ownership of the property in question vested in it as part of the immovable.

Williams Richardson Company, Limited, a judgment creditor of Crescent-Magnolia Planting & Manufacturing Company, Limited, caused the property in question to be seized by the sheriff of the parish of Terrebonne and to be advertised for sale, the purpose being to sell it and apply the proceeds as a credit on its said judgment. Brauds' Sugars, Inc., intervened, opposed and enjoined the sale, alleging its ownership as above stated.

The property seized and claimed by Brauds' Sugars, Inc., is described as follows: A certain narrow-gauge railroad dummy named "Minerva"; a certain press drill, grindstone, and forge bellows; a certain lot of manilla rope consisting approximately of 250 pounds; a certain lot of crude oil in tanks, consisting of approximately 750 barrels; a certain lot of cylinder oil, amounting to 3½ drums, approximately 175 gallons.

The court sustained plaintiff's claim to the press drill, grindstone, forge bellows, and cylinder oil, amounting to 3½ drums, approximately 175 gallons, on the grounds stated, but rejected its demand to the balance of the property.

The plaintiff has appealed.

The case was submitted to the lower court and is before us on a statement of facts. Brauds' Sugars, Inc., has filed a brief, citing authorities in support of its demand, but we find none in behalf of Williams Richardson Company, Limited. Brauds' Sugar, Inc., intervener and third opponent, claiming the ownership of the property in question against the seizing creditor, and the judgment debtor has made the seizing creditor a party defendant, but the judgment debtor was not made a party to the suit. Williams Richardson Company, Limited, the seizing creditor, accepted service of the petition of intervention, waived citation and the service upon it of a copy of

the order of the court, notice of rule, and of summons to comply with the restraining order, but did not file any answer to the demand of the intervener.

An intervention and third opposition claiming the ownership of property seized against the seizing creditor and the judgment debtor is a demand that should be answered by the adverse parties. Code Practice, art. 393; McCoy v. Sanson (Estate of Carasco, Intervener), 13 La. Ann. 455; Burge v. Batson, 149 La. 542, 89 So. 687, but in the case Seib v. Cooper, 170 La. 105, 127 So. 380, 382, the court, referring to an intervention that had not been answered, says:

"We know of no rule of practice which requires an answer to the allegations of an intervention. Such allegations are held to be traversed by all parties to the suit without pleading thereto"—citing authority.

This late decision does not in terms speak of article 393 of the Code Practice and the earlier decisions. It is our want to be guided by the latest decision of the Supreme Court on any subject, but in this case the question of ownership between Brauds' Sugars, Inc., and Williams Richardson Company, Limited, is put before us on this appeal on the part of Brauds' Sugars, Inc., without Williams Richardson Company, Limited, having judicially either admitted or denied the demand of the intervener. We note, however, that the minutes of the lower court do not show that Brauds' Sugars, Inc., caused to be entered any default on its demand against Williams Richardson Company, Limited. The agreement of the parties as to the facts may take the place of a default, and there is no motion to dismiss; consequently we should act on the appeal and on the record as brought before us. There is no dispute about the facts, and we are called on to apply the law to admitted facts.

The statement of facts shows that Brauds' Sugars, Inc., is the owner of a "certain tract of land containing five acres, situated in the parish of Terrebonne about 12 miles above the town of Houma, taken from the northern half of the plantation known as the Magnolia Plantation, together with the sugar house, sugar house machinery, apparatus equipment, tools, etc., together with all the rights, ways, privileges, servitudes and appurtenances attached thereto or in any way appertaining, which said five acres on which said sugar house, etc., stands is more particularly shown by reference to a map of Isle of Cuba and Magnolia Plantations surveyed November 1924 by L. Q. Huey, C. E." The further description of the immovable is not necessary for the purposes of this suit.

That beginning at a time previous to the 14th of May, 1925, and continuing until 15th of March, 1930, Crescent-Magnolia Planting & Manufacturing Company, Limited, domiciled in the parish of Terrebonne, was the owner of said five-acre tract of land with the sugar house, machinery, apparatus, equipment, tools, etc., placed thereon by the said Crescent-Magnolia Planting & Manufacturing Company, Limited.

That Brauds' Sugars, Inc., acquired the said immovable with said property thereon by purchase at a foreclosure sale made by the sheriff in the foreclosure of a mortgage on said property. That the property in question belonged to the said Crescent-Magnolia Planting & Manufacturing Company, Limited, and was placed on said immovable during the existence of the mortgage.

That all the property in question was situated on the five acres of land men-

tioned, except the 700 barrels of crude oil which was stored in a large tank a few hundred feet from the factory site, but connected with the factory by means of an underground pipe, and was for the use of the factory in its grinding operations. The sugar house had not been operated for three seasons, presumably the three seasons previous to the date of the agreement, which was April 24, 1930.

That Crescent-Magnolia Planting & Manufacturing Company, Limited, plaintiff's vendor in the sheriff's sale, operated the Isle of Cuba and Magnolia plantations and the refinery as a unit. That the unit mentioned was dismembered at the foreclosure proceedings at which plaintiff became the purchaser of the five acres of ground with the sugar house and refinery, etc., thereon; the Isle of Cuba plantation by another, and the Magnolia Plantation by another purchaser. That the unit was broken up, not as a result of the consent and approval of Crescent-Magnolia Planting & Manufacturing Company, Limited, and the seizing creditor, but as the result of the foreclosure of mortgages which the Crescent-Magnolia Planting & Manufacturing Company, Limited, had granted on its properties. That the three properties were operated as a unit, at the time the mortgages under which they were sold were granted. That the dummy called "Minerva" was used to haul the cane produced on the property to the factory. That the oil was in the tank during the existence of the mortgage to the Louisiana Trust & Savings Bank and was to be used in the operation of the factory in grinding cane from the Isle of Cuba and Magnolia plantations at the time they were operated as a unit. That the other property seized occupied the same situation as the oil and the dummy.

It seems to us, from this statement of facts, that all the property claimed by Brauds' Sugars, Inc., and involved in this suit was destined by the owner at the time it was brought on this property for the service and improvement of the sugar house. The 725 barrels approximately of crude oil in tanks was not actually on the factory site, but it was connected with the factory by an underground pipe and destined for use in its operation. It was destined to be used in the factory for the purpose of grinding the cane produced by the plantations belonging to and operated by the same owner. It was in our opinion an adjunct and fixture of the sugar house to the same extent as was the cylinder oil, press drill, grindstone, and forge bellows and other things placed on the ground for the operation of the sugar house and not intended for any other purpose or use. The destination was very similar in principle to that provided for by the Civil Code, art. 467, according to which: "The pipes made use of for the purpose of bringing water to a house or other estate are immovable and part of the tenement to which they are attached." In the same way the dummy "Minerva" was destined for the service, improvement, and operation of the sugar house, and was not intended for any other purpose or use.

We are therefore of the opinion that under the admissions upon which the case was submitted that Brauds' Sugars, Inc., acquired all the property described in its petition as appurtenances of the immovable which it acquired at the foreclosure sale of the five acres with sugar house refinery, etc., thereon.

We find the judgment appealed from to be correct to the extent that the right of Brauds' Sugars, Inc., is recognized and sus-

tained to the press drill, grindstone, and forge bellows, and to that extent it is affirmed, but the demand of Brauds' Sugars, Inc., for the 725 barrels approximately of crude oil in tanks, lot of manilla rope, approximately 250 pounds, and the dummy engine called "Minerva," should also have been recognized and sustained, and the judgment is to that extent erroneous and is therefore annulled, avoided, and set aside, and Brauds' Sugars, Inc., is now recognized and decreed to be the owner of the 725 barrels approximately of the crude oil in tanks, one lot of manilla rope, approximately 250 pounds, and the dummy engine called "Minerva," and that said property be restored to Brauds' Sugars, Inc. The injunction sued out by Brauds' Sugars, Inc., against Williams Richardson, Limited, preventing the sale of said property, is perpetuated; Williams Richardson Company, Limited, to pay the costs in both courts.